DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**DARLENE SACCO-MARTIN** and
**GLENN MARTIN, III,**
Appellants,

v.

**ANTHONY ROMANO,**
Appellee.

No. 4D2024-0869

[August 20, 2025]

Appeal of nonfinal order from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; Nicholas Lopane, Judge; L.T. Case No. PRC 210005610.

Justin C. Carlin of The Carlin Law Firm, PLLC, Fort Lauderdale, for appellants.

Douglas Reynolds and Jennifer A. Bautista of Tripp Scott, P.A., Fort Lauderdale, for appellee.[1]

PER CURIAM.

Appellants Darlene Sacco-Martin and her husband Glenn Martin, III appeal a nonfinal order requiring them to return funds to the guardianship estate of Darlene's parents, Leon Sacco and Corina Sacco (the "Wards"). Appellants argue that the lower court erred regarding several factual findings, evidentiary rulings, and legal conclusions. We affirm on all issues without discussion, except one that requires reversal. Because the probate court's inclusion of a $20,000 wire transfer in the return amount was not supported by competent, substantial evidence, we reverse in part and remand for the probate court to deduct this $20,000 from the total amount to be returned to the Wards' estate.

**Background**

---

[1] Anthony Sacco has since been appointed as successor guardian, and the answer brief was filed on his behalf as the substituted appellee.

This case involves Appellants' alleged misappropriation of the Wards' assets. In October 2019 and February 2020, the Wards granted power of attorney to Appellants, but in May 2021, the Wards revoked that power of attorney. Shortly thereafter, the Wards granted power of attorney to their son, Anthony Sacco ("Son").

Son initiated a civil suit against Appellants on the Wards' behalf, alleging Appellants had "wrongfully exercised dominion and control" over the Wards' various financial accounts. Son claimed Appellants had used the revoked power of attorney to access the Wards' bank accounts and transfer hundreds of thousands of dollars to Appellants.

The probate court appointed an emergency temporary guardian for one of the Wards, who later became the plenary guardian of the person and property of both Wards.[2] Son subsequently became the successor guardian. The original guardian had raised similar concerns as Son regarding Appellants' potential financial exploitation of the Wards. Additionally, the original guardian had moved to compel an accounting and return of assets that Appellants allegedly had misappropriated when they had acted under the power of attorney. Son's civil case against Appellants was transferred and heard in the same probate court division as the guardianship proceedings.

The probate court ordered Appellants to provide an accounting of the Wards' assets from October 16, 2019 through September 30, 2021—the time period largely encompassing when Appellants had acted under the power of attorney. An evidentiary hearing was held, during which the probate court considered evidence including bank statements and Appellants' testimony.

The probate court ultimately found Appellants did not establish, by clear and convincing evidence, that several fund transfers were made for the Wards' benefit. Accordingly, among other fund transfers, the probate court ordered Appellants to return a $20,000 wire transfer from March 2019 to the Wards' estate. However, the March 2019 transfer predates when the Wards had granted a power of attorney to Appellants. This appeal follows.

## Analysis

The lower court's order presents mixed questions of fact and law. Such an order "require[s] the application of two different standards of review.

---

[2] Corina passed away during the pendency of the proceedings.

The factual findings must be supported by competent, substantial evidence, while legal findings are reviewed de novo." *Greenberg v. Bekins of S. Fla.*, 337 So. 3d 372, 375 (Fla. 4th DCA 2022) (citation omitted).

The probate court's order found "wire transfers to and from this account show[ing] that on March 15, 2019, while acting as Agent of the DPOA, [Appellants] transferred $20,000.00" from a bank account belonging to one of the Wards. The order specified the accounting did not demonstrate how this transfer was for that Ward's benefit. However, this transfer predates when Appellants had acted under the power of attorney and falls outside the probate court's specified October 16, 2019, to September 30, 2021, accounting timeframe. Thus, the probate court's award of this $20,000 amount for Appellants to return to the estate is not supported by competent, substantial evidence.

## Conclusion

Because the probate court's inclusion of the $20,000 wire transfer award is not supported by competent, substantial evidence, we reverse and remand for the probate court to deduct this $20,000 from the amount that Appellants must return to the Wards' estate. The probate court's order is affirmed in all other respects.

*Affirmed in part; reversed and remanded in part.*

GROSS, MAY and FORST, JJ., concur.
FORST, J., specially concurs with opinion.

FORST, J., specially concurring.

I join my colleagues in ordering the probate court to deduct the $20,000 wire transfer from the amount which Appellants must return to the estate. But I also believe clarification is needed surrounding two houses purchased by Appellants using the Wards' funds during the period when Appellants had acted the Wards' agent under the power of attorney.

Specifically, the record has not been sufficiently developed as to whether the sale proceeds from one house ("4520"), purportedly initially purchased with the Wards' funds as "an investment," had partially funded the second house purchase ("4528") that Appellants later contend the Wards had "gifted" to them.[3] These two houses are located on the same

---

[3] The probate court was not convinced that the Wards competently gifted "4528" to Appellants.

residential street ("Old Carriage Trail"), so the probate court's written order referencing the "Old Carriage Trail Property" does not resolve this confusion. Additionally, the same law firm handled both closings (the sale of "4520" and the purchase of "4528") on the same date.

The appealed nonfinal order breaks down the amount which Appellants must return to the estate into two scenarios—$160,081.92 "[w]ithout Old Carriage Trail Property" or "at least $927,614.04 if such relief now includes costs associated with the purchase of the Old Carriage Trail Property." When the $160,081.92 is subtracted from $927,614.04, the $767,532.12 subtotal is composed of $562,532.12 transferred from the Wards' bank account, $100,000 transferred from that same bank account, and $105,000 for "Old Carriage Trail Mortgage."

The "4520" house was purchased in November 2019 with the Wards' funds, and at that time, $562,532.12 was transferred from the Wards' bank account to the law firm handling the closing. This transfer was labeled as "4520 Old Carriage Trail Property," which was then titled in the Wards' names. Appellants' verified accounting filing indicates that "4520" was later sold for $656,000 in February 2020. What is not clear is where the sale proceeds from "4520" were transferred. However, in Appellants' response to the original guardian's motion to compel return of assets, Appellants stated, "on February 12, 2020, the same day that [Appellants] closed on the purchase of ['4528'], the Wards conducted a closing with [law firm] for the sale of their investment property located at ['4520'], and authorized [law firm] to *apply the sale proceeds* to the purchase of ['4528']." (emphasis added).

The "4528" closing likewise occurred in February 2020, and the purchase price was $746,000. Additionally, roughly three weeks before, $100,000 was transferred from the Wards' bank account to the law firm with the notation, "Closing for 4528 Old Carriage Trail." I believe the record requires clarification as to whether this $100,000 was combined with the $656,000 in sale proceeds from "4520" to purchase "4528." The "4528" property was titled in Appellants' names, served as their homestead, and apparently was *not used* for the Wards' benefit. Adding to the confusion is evidence that, in 2021, Appellants obtained a $105,000 loan secured by a mortgage on "4528," and the referenced $100,000 and $105,000 amounts were included in the written order as being affiliated with the "Old Carriage Trail Property."

As noted, the "Old Carriage Trail Property" listed amounts affiliated with both the "4520" and "4528" houses. Based on this and the other above-noted ambiguities, I would remand for the probate court to clarify if

the Wards' funds used to purchase "4520" and the sale proceeds from "4520" factored into the purchase of "4528." As matters stand, unanswered questions appear to remain regarding where those "4520" sale proceeds were transferred and how those proceeds were potentially spent. *See Matteis v. Matteis,* 82 So. 3d 1048, 1049 (Fla. 4th DCA 2011) (remanding for clarification because of "many unanswered questions" in the final judgment).

*        *        *

***Not final until disposition of timely filed motion for rehearing.***